## WARREN COUNTY FERTILIZER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15999. Promulgated August 16, 1929.

*Henry Ravenel, Esq.*, *Henry H. Elliott, Esq.*, and *Victor Markwalter, C. P. A.*, for the petitioner.

*James A. O'Callaghan, Esq.*, and *P. A. Bayer, Esq.*, for the respondent.

116

OPINION.

STERNHAGEN: Petitioner, a business corporation, subject for 1919 and 1920 to income and profits taxes imposed by the Revenue Act of 1918, contends that the respondent's determination of deficiencies for those two years is erroneous in so far as it results in taxes higher than those which would be arrived at by the special comparative method prescribed by section 328. This section applies to the corporate taxpayers described in section 327, and petitioner has sought to bring itself within the class described in subsection (d), which is as follows:

(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the

corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The sole question now to be decided is whether the evidence establishes the abnormal condition required by this section. If so, the parties will proceed further under Rule 62 to arrive at the correct comparative tax; and if not, the respondent must be sustained.

At the beginning of the trial petitioner put in evidence the report of the revenue agent who examined its books and the respondent's statement based thereon, in order to show the method of arriving at the determination here in issue. Although these exhibits were not offered as proof of the facts which they purported to state and which served as the hypothesis of respondent's determination, it was apparently assumed by both parties that some of the facts would be accepted as found in the report. Such facts have, however, been omitted from the findings because of the limitation of the offer. The exhibits show the following for the fiscal years 1917 to 1921, inclusive:

| Year | Net income | Invested capital | Deficiency | Overassessment |
|------|-----------|------------------|------------|----------------|
| 1917 | $11,889.41 | $42,694.54 | | $2,273.39 |
| 1918 | 18,351.32 | 42,703.87 | $239.44 | |
| 1919 | 29,647.34 | 51,833.14 | 2,960.24 | |
| 1920 | 36,092.37 | 68,896.97 | 1,615.02 | |
| 1921 | 1 20,751.14 | | | |

1 Loss.

Since for the years in issue, 1919 and 1920, the profits tax which would result from the use of the method required by section 301, i. e., in accordance with the ratio of income to statutory invested capital, was higher than the percentage method of section 302, the latter was used to limit the tax. The method of section 302 is only used if thereby the tax is lower than it would be under the more ordinary method of section 301; and when section 302 applies, invested capital is not a factor of the computation. Petitioner insists that the lower tax under section 302 is still too high and that conditions of income and capital during 1919 and 1920 were abnormal within section 327 (d), which the Commissioner has denied.

The evidence shows that, from the time of its incorporation in 1911, petitioner has consistently carried on its operations under the same conditions. It had very little equipment, which was all it needed. The Cotton Oil Co. was its largest stockholder and apparently afforded a means of financing which was of mutual advantage. Whether it can be said, as petitioner contends, that because of this it conducted its business largely on borrowed capital, may be doubted. The exhibits show that in respondent's computation of petitioner's invested capital large surpluses were included, and if petitioner permitted these to lie idle while actually using amounts borrowed on running account from the Cotton Oil Co., it would be an artificial construction of the special relief of section 327 to say that such borrowing constitutes an abnormal condition which fairly justifies special assessment. But whether that be the situation or not—which can not be safely said from the evidence, the invested capital has not by any evidence in this record been shown to be abnormal either in amount or character.

As to income, the condition relied upon as abnormal is that the officers, except DuPuis, took no salaries. The business required little or no services except those of DuPuis as manager. Its active season lasted but twelve weeks and during that time Fitzpatrick, who was a substantial stockholder and president of the local bank, devoted a few minutes a day to its problems. These services and the incidental services of Bargeron, who was an employee of the Cotton Oil Co. and also a small stockholder, were apparently not sufficiently important to require salary compensation, and in our opinion there was no abnormal condition of income in the failure to pay such salaries. Furthermore, there is in the evidence no sufficient reason to support the opinion of the witness DuPuis as to the measure of such compensation. He testified to no other similar services or salaries to be used as a yardstick.

Going a step further, it may well be doubted whether the balance between normal and abnormal income would be seriously affected by the comparatively small aggregate of additional salaries which in his opinion might reasonably have been paid. The income was $29,647.34 and $36,092.37, and DuPuis' opinion of the value of the services was $3,500 and $4,600 respectively. See *Camden Woolen Co.*, 12 B. T. A. 1277. There is no rule that the failure to pay salaries to some of those who nominally hold office in a corporation or who as stockholders perform a modicum of service in its behalf constitutes an abnormal condition. See *Crowley Brothers, Inc.*, 2 B. T. A. 477. Whether small or inadequate compensation creates an abnormality is a substantial question in each case and depends upon all the circumstances. Unless a norm is reasonably established there is

no test by which to determine the abnormal. For all that appears in this record, the situation of this corporation in 1919 and 1920 was consistent with its own history and consistent with that of normal conduct in this industry and in this locality. To say that under these circumstances it should be taxed upon a standard lower than that conventionally applicable to the ordinary taxpayer would be to create an abnormality in its favor rather than to remedy an unfairness, as the special assessment contemplates.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

Smith dissents.